## STOVER'S ADMINISTRATORS *vs.* WOOD and others.

The complainant having been induced to exchange with the defendant mortgages, in part for bonds, upon false and fraudulent representations of the defendant as to the value of the bonds, which proved to be worthless;

which exchange the defendant knew at the time of the agreement therefor,. the complainant would not make, without just such assurances as to their value as the defendant made; which mortgages were, thereupon, cancelled,. and the defendant thereby secured a title to the property, upon which they were a lien, free from the encumbrance of the mortgages; the encumbrance of the mortgages was re-established.

On final hearing, on pleadings and proofs.

*Mr. J. N. Voorhees* and *Mr. J. T. Bird*, for complainants..

*Mr. J. Wilson* and *Mr. Vanatta*, Attorney-General, for defendants, W. J. Wood and Freeman Wood.

THE CHANCELLOR.

This suit was originally brought by Henry S. Stover, now deceased, against William J. Wood and Freeman Wood and Salome M. Long, to set aside the cancellation of two mortgages, held by Stover, on certain real property in Hunterdon county, known as the Long Farm and Forge Mills. Those mortgages were delivered over to the Woods, in carrying out an agreement between Freeman Wood, and the widow and heirs-at-law of James M. Long, deceased, for the sale of the property to him. The deed for the property was delivered on the 2d of October, 1867, and the mortgages, with the bonds they were made to secure, were delivered up to be cancelled by Henry W. Long, one of the above mentioned heirs-at-law, to whom they had been entrusted for the purpose by Henry S. Stover, who was his maternal grandfather. There was then due upon them the sum of $10,673.95, for principal and interest. The agreement was made on the 19th of August, 1867, and provided for the sale of the Long property to Freeman Wood, for the consideration of $24,000, of which $5000 were to be paid in cash, and the balance by the conveyance of a dwelling-house and lot of land in Brooklyn,. valued at $10,000, but encumbered for $4500, subject to which encumbrance it was to be conveyed; and by the transfer of eleven first mortgage bonds of the Brooklyn and Car-

narsie, or Newburgh and Flatbush Railroad Company, of the par value of $1000 each, bearing interest at the rate of seven per cent. per annum, and $2500 of the stock of that company. The conveyance of the Long farm was to be free of all encumbrance. In carrying out the agreement, $2500 of the money agreed to be paid in cash were secured by mortgage on the Long property. At the filing of the bill that mortgage was held by the widow of James M. Long, deceased, and she, for that reason, was made a party defendant to the suit. Henry S. Stover, by his bill, alleged that he was induced to part with his mortgages by the fraudulent representations of Freeman Wood, in regard to the character and value of the railroad bonds above mentioned, which he, in consequence thereof, agreed to receive, and did in fact receive, in exchange for his mortgages. The proof sustains the allegation. The negotiations for the agreement to sell were carried on by one Williams, who appears not only to have been an acquaintance of Freeman Wood's, but to have been associated with him occasionally, in speculations. The property belonged to the heirs of James M. Long, deceased. Dr. Isaac S. Long, who was one of the heirs, first spoke of the property to Williams, in a casual conversation between them, on the occasion of a professional visit of the former at the house of the latter, in Englishtown, in the county of Monmouth. Williams at once stated that he had a purchaser for the property, who would take it and pay for it with a house and railroad bonds. Williams and Dr. Long went to New York accordingly, to see the purchaser. Williams drew the agreement in the cars on their way there, and before he had seen the proposed purchaser, who proved to be Freeman Wood. After an interview with Wood the agreement was concluded, upon the terms above stated, and was signed by Freeman Wood and Dr. Long. It was not, however, signed by the other heirs until afterwards; and Henry W. Long, who was one of them, refused to sign it, until it had been ascertained whether Henry S. Stover would accept the railroad bonds in exchange for his mortgages. He accompanied Henry S. Stover's son,

Jacob, to New York, to see Freeman Wood in reference to the bonds. This visit was made before Henry W. Long signed the agreement. In the interview which Jacob Stover and Henry W. Long then had with Wood, the fact that Henry S. Stover would be unwilling to take the railroad bonds, unless satisfied as to their character and value, was stated to Wood. He knew also, at that time, that the agreement would not be carried out, and, indeed, that it would not be completed, unless Henry S. Stover was satisfied to exchange his bonds and mortgages for the railroad bonds proposed to be given for part of the consideration of the conveyance of the Long property to Wood. Under these circumstances, when he was applied to on the subject by Jacob Stover in behalf of his father, he was bound to tell the truth, if he spoke at all. Jacob Stover says that, in the interview with Wood, he told the latter, that from what information he could get, the railroad bonds were not at par; that Wood replied that he never represented them as par; that then the witness asked him, he thinks, what they would sell for, and Wood answered that he did not suppose they would fetch over eighty cents to the dollar, if put to a forced sale, but they were worth all they called for as a permanent investment. He further testifies that Wood showed them (him and Henry W. Long) one of the bonds, and said that they could see that the interest had been paid—that the coupons had been cut off. He further states that he thought that Mr. Wood appeared to be in rather a bad humor, and was not disposed to have much talk with them. He says Wood wanted to have the matter closed up, he said; and the witness adds, that the reason why the transaction was not closed on that day, was that he was unwilling to say that his father would take the whole of the amount due on the mortgages in bonds, as he had instructed him to say that he would take one-half in bonds and the remaining half in money. Wood admits that he told the witness that the bonds were first mortgage bonds, and that the interest had been paid on them. While he denies that he said they were a good investment, he says that what he

did say on that head, was in reply to Jacob Stover's question whether he considered the bonds a good investment to any man who wanted to invest his money; to which he answered that they were good enough for him, but that he (Stover) must satisfy himself as to their security and valuation, by inquiries and examination outside. It is admitted that the bonds were not first mortgage bonds as to the whole of the road, for as to part, there was a prior mortgage of $65,000, and it appears, beyond all question, from the evidence, that the interest had not been paid on the bonds, for the reason that the company had not the money to pay it. At that very time, as Wood knew, there was an unpaid judgment against the company for the amount of their note, given for interest, due the May preceding, on some of the bonds. Taking his own version, his statement in answer to the question whether he considered the bonds a good investment, was equivalent to an affirmative answer: "They were good enough for him." If he answered the question at all, he was bound, under the circumstances, to answer truly. The evidence is that the bonds were of no value in the market, and the sequel speedily showed that they were, in fact, worthless. In the early part of September, 1867, one bond of $1000 was sold for $400. In that month, or in October following, Wood brought $9000 of the bonds to the witness, Ryder, in order that the latter might find a purchaser for him, and authorized him to sell them at between forty and fifty cents on the dollar, but no purchaser could be found. Richardson says that in the spring of 1867, some of the bonds were offered at ten per cent. Prior to September of that year, payment of overdue interest coupons at the bank where they were made payable, had been refused for want of funds. On the 22d of July, 1867, a suit was, to Wood's knowledge, begun against the company for over $7000. In short, the evidence shows that, at the time when Wood made the representations on which the complainant was induced to part with his bonds and mortgages on the Long property, in exchange for the railroad bonds, the latter were worthless, and Wood

was fully aware of the fact. It also shows that Henry S. Stover would not have consented to exchange his mortgages for the bonds, if he had not been satisfied that the latter were a good interest paying investment; that he sent Jacob to Wood to ascertain the character and value of the bonds; and that Wood, knowing that the agreement would not be carried out unless Henry S. Stover would exchange his mortgages for the bonds, and knowing, also, that Jacob Stover, who had heard unfavorable reports in regard to the bonds, had come to him for information on the subject, made representations in regard to them which he knew to be false, and which induced Henry S. Stover to consent to exchange his mortgages for the bonds. Nor can the consequences of these representations be avoided, by proof that Freeman Wood told Jacob Stover that he must satisfy himself elsewhere in regard to the bonds. *Torrey* v. *Buck*, 1 *Green's Ch. R.* 366 ; *Sprye* v. *Reynell*, 1 *D. M. & G.* 660.

But it is insisted by Wood and his son, that the purchase was not made by Freeman Wood for himself, but for his son, as whose attorney or agent he acted in the matter, as they say, and that on the day the deeds were delivered, the latter declared to Henry W. Long that he, William J. Wood, made no representations, and, at the same time, offered to abandon the agreement.

It is not difficult to see in this declaration and offer, especially in connection with William's protest made thereupon, " that it was too late for Wood to back out," the management which, after the representations had been made by Freeman Wood, sought to make him a mere attorney for his son, as if by that means the apprehended effect of the representations could be escaped. The evidence shows clearly that the purchaser was Freeman Wood, and not his son. It is also quite evident that the conveyance of the property by William J. Wood to his mother, Freeman Wood's wife, by voluntary deed, in November, 1867, was for the benefit of his father. That deed was not put on record until May, 1870. No mention was made of it in the answer of the Woods,

which was filed April 10th, 1868, but, on the other hand, it states that the title to the land was, at the filing of the answer, held by William J. Wood to his own use. The transaction of the Wyman mortgage, is evidence that the title was shifted from William J. Wood to his mother, for his father's benefit. Though it appears in the evidence that Freeman Wood and his wife have, since the commencement of this suit, sold and conveyed away the property, yet it appears also, that it was with full and complete notice of this litigation, and that the conveyance was accompanied by an indemnity against any adverse consequences of this suit. It is the duty of this court to dispose of the case on the pleadings, and between the parties. Those who are not parties to the suit, and in whose hands the land is not chargeable with the consequences of the suit, if any such persons there be, will, of course, not be affected by the decree. As between the parties to this suit, the encumbrance of the complainant's mortgages upon the Long property should be re-established, and it will be done accordingly.